CULLEN AND DYKMAN, LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516)357-3700
Matthew G. Roseman, Esq. (MR 1387)
C. Nathan Dee (CND 9703)
Bonnie L. Pollack, Esq. (BP 3711)

Attorneys for Global Container Lines Ltd., et al.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| GLOBAL CONTAINER LINES LTD., | Case No. 09-78585 |
| Debtor. | |

-------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| SHIPTRADE, INC., | Case No. 09-78584 |
| Debtor. | |

-------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| GCL SHIPPING CORP., | Case No. 09-78589 |
| Debtor. | |

-------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| GLOBAL PROGRESS LLC, | Case No. 09-78588 |
| Debtor. | |

-------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| GLOBAL PROSPERITY LLC, | Case No. 09-8590 |
| Debtor. | |

-------------------------------------------------------x

# DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING, BUT NOT DIRECTING, DEBTOR'S TO PAY CERTAIN PRE-PETITION CLAIMS MARITIME LIEN CLAIMANTS AND (B) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS

The above-captioned Debtors and Debtors-in-Possession (collectively the "Debtors") seek entry of an order, substantially in the form attached hereto as Exhibit "A" (the "Order"), (a) authorizing but not directing the Debtors to pay certain pre-petition claims maritime lien claimants and (b) authorizing financial institutions to honor all related checks and electronic payment requests. In support of this motion, the Debtors submit the declaration of Bajin Paksima an officer of the Debtors declaration in support of first day pleadings. In further support of this motion the Debtors respectfully state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 157 and 1334. This matter is a core proceeding within the meeting of 28 U.S.C. Section 157(b)(2).

2. Venue in this Court is proper to pursuant 28 U.S.C. Sections 1408 and 1409.

3. The basis for the relief requested herein are Sections 105(a), 363(b), 1107(a) and 1108 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4. On November 10, 2009 (the "Petition Date"), each of the Debtors filed a petition with this Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors-in-possession pursuant to Sections 1107(a)

and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases no statutory committees have been appointed or designated.

5. Concurrently with the filing of this motion, the Debtors have sought procedural consolidation and joint administration of these chapter 11 cases under the case of Global Container Lines Ltd. ("Global"). The description of the Debtors business and reasons for filing of these chapter 11 cases is set forth in the affidavit under local Bankruptcy Rule 1000-4 of Bijan Paksima an officer of the Debtors which is being filed contemporaneously with this motion. The factual allegations contained in the affidavit of Mr. Paksima are incorporated herein by reference.

## BASIS FOR RELIEF

### A. The Shippers, Warehouseman, Processors and Related Logistics Coordinators

6. As described in the Paksima affidavit, the Debtor's operate a global shipping business servicing North America, the Mediterranean, the Middle East, East, South and West Africa, the Persian Gulf, India, Pakistan, Mozambique and Major Indian Ocean Islands. Additionally, the Debtors specialize in complex logistical projects for various international organizations including the United Nations Peace Keeping Mission, U.S. Military Sealfit Command, United Nations World Food Program, United States Agency for International Development and other humanitarian relief agencies. To maintain their operations and fulfill their contractual obligations the Debtors employ an intricate network of shippers, shipping agents and foreign and domestic third party carriers.

7. Specifically, the Debtors have a long-term business relationship with Mercur International Development Company Ltd. ("Mercur"). Mercur provides overland transportation and security services to the Debtor by which delivery of critical supplies and equipment to U.N.

3

Peace Keeping forces as part of the U.N. Peace Keeping Mission in the Darfur region of Sudan are made.

8.  The Debtors are obligated to Mercur in the pre-petition amount of approximately $1 Million. Significant amounts of the U.N. Peace Keepers supplies and equipment are currently waiting transport in various locations in Sudan. However, the Sudanese railroad authority and local trucking companies have refused to transport the cargo until payment is received from Mercur. Likewise Mercur is unable to advance those significant funds until it receives payment from the Debtors.

9.  The payment to Mercur will be used to pay transportation costs to deliver the equipment and supplies critically needed by U.N. Peace Keepers at their final destination in Darfur. In that regard the Debtors contract with the U.N. contemplates payment only after all U.N. cargo has been delivered to its final destination or on a completed job basis. Absent final delivery of the supplies the Debtors will be in breach of their contractual obligations to the U.N. and unable to collect the balance of the remaining U.N. accounts receivable since the U.N. contracts require payment only upon a completed job basis.

10. Failure to pay Mercur will result in a non-delivery of supplies and equipment to the U.N. and will constitute a breach of the Debtor's obligations under the U.N. contracts. This event would have devastating consequences for the Debtors reorganization prospects. If the U.N. contracts are breached the U.N. will cause the Debtors to be delisted as an approved vendor. Accordingly, the Debtors would no longer be able to compete for U.N. contracts at a time when the global shipping market is experiencing a serious downturn because of the world wide recession.

11. The Debtors eventually expect to realize the sum of $5,200,000.00 from the accounts receivable due and owing from the U.N. as well as having the continued ability to bid on contracts. In fact the Debtors expect to be awarded a $2.4 Million U.N. contract shortly.

12. Mercur's the most experienced and reputable provide of security and transportation services in East Africa and a continued relationship is absolutely necessary for the Debtor to maintain its project and logistical businesses.

## B. <u>Maritime Liens</u>

13. As a result of the Debtors liquidity crisis, they have been unable to pay crew member wages and certain vendors, fuel suppliers and fees owed to port authorities during the usual and ordinary course of their business. As a matter of maritime law, these obligations create liens (the "Maritime Liens") against the vessels for which services are provided. The Debtors estimate that as of the date hereof, the Debtors owed the Maritime Lien claimants approximately $1,600,000.00.

14. Pursuant to Section 362(b)(3) of the Bankruptcy Code, the act of perfecting liens, to the extent consistent with Section 546(b) of the Bankruptcy Code is expressly excluded from the automatic stay. Therefore notwithstanding the automatic stay imposed by Section 362 of the Bankruptcy Code, certain of the Debtors creditors (the "Maritime Lien Claimants") will be entitled to a certain perfect liens against the Debtors property during these chapter 11 cases. More troubling is that the Debtors ships may be subject to arrest. Currently the vessels the Global Progress and the Global Prosperity are currently offloading cargo in the Port of Mombasa, Kenya.

15. In the event funds are not made available immediately, these vessels risk arrest. In fact, the Debtors were advised by email by the International Trade Federal which acts as a

international body protecting sea farers rights that if crew wages were not paid immediately the vessels would be subject to arrest by the local ITF representative.

## RELIEF REQUESTED

16. By this motion, the Debtors request entry of an order substantially in the form of the order attached hereto as Exhibit "A", pursuant to Sections 105(a), 363(b), 107(a) and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003, authorizing, but not directing, them to pay the pre-petition transport charges and pre-petition Maritime Lien Claims. The Debtors also requested the order be entered on an interim basis, and in the absence of objections to the interim relief granted that the order become final on the date specified therein. A schedule of pre-petition claims subject to this motion is annexed as Exhibit "B".

17. The Debtors further request that the Court authorize financial institutions to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the foregoing, whether such checks were presented or electronic requests were submitted before or after the Petition Date, and that all such financial institutions be authorized to rely on the Debtors designation of any particular check or electronic payment request as appropriate pursuant to this motion.

## SUPPORTED AUTHORITY

18. The Court may authorize the Debtors to pay the pre-petition claims and Maritime Lien Claims pursuant to Sections 1107(a), 1108 and 363(b) of the Bankruptcy Code pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the debtors-in-possession are "fiduciaries holding the bankruptcy estates and operating the businesses for the benefit of their creditors and (if the value justifies) equity owners". In re CoServ, LLC, 273 B.R. 487, 497 (Bankr. N.D. TX 2002). Implicit in the fiduciary duties of any debtor-in-possession is the obligations to "protect

and preserve the estate, including an operating business going concern value". Id. Some courts have noted that there are instances in which a debtor can fill this fiduciary duty "only . . . by the pre-plan satisfaction of pre-petition claim." Id. In CoServe the court specifically noted that the pre-plan satisfaction of pre-petition claims would be a valid exercise of the Debtors fiduciary duty when the payment is the only means to affect a substantial enhancement of the estate.

19. Section 363 of the Bankruptcy Code provides in relevant part that "the trustee, after noticing a hearing may use, sell or lease, other than the ordinary course of business, property of the estate". 11 U.S.C. Section 363(b)(1). Under this section, a court may authorize a debtor to pay certain pre-petition claims. See In Re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). To do so, " the debtor must articulate some business justification other than mere appeasement of major creditors." Id. at 175.

20. Additionally, the court may authorize payment to pre-petition claims in appropriate circumstances based on Section 105(a) of the Bankruptcy Code. Under Section 105(a), courts may permit pre-plan payments of pre-petition obligations when essential to the continued operation of the debtors business. Specifically, the court may use its power under Section 105(a) to authorize a payment of pre-petition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va 1992).

21. Courts have also permitted post-petition payment of pre-petition claims pursuant to Section 105(a) in situations where non-payment of pre-petition obligations would trigger a withholding of goods or services essential to the debtors business reorganization plan. See In re UNR Industries, Inc., 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay

pre-petition claims of suppliers or employees whose continued cooperation is essential to the debtor's successful reorganization).

22. It is respectfully submitted that the paying of the pre-petition claims and Maritime Lien Claims will benefit the Debtors estates and the creditors by allowing the Debtors business operations to continue without interruption.

### REQUEST FOR WAVIER OF STAY

23. The Debtors further seek a waiver of any stay of the effectiveness of the order approving this motion. Pursuant to Bankruptcy Rule 6004(h) "an order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of ten (10) days after entry of the order unless the Court orders otherwise". As set forth above, the payments proposed herein are essential to prevent potentially irreparable damage to the Debtors operations, value and ability to reorganize. Accordingly, the Debtors submit that ample cause exists to justify of a waiver of the ten (10) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

### DEBTORS RESERVATIONS OF RIGHTS

24. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors rights to dispute any claim or an approval or assumption of any agreement, contract or lease under Section 365 of the Bankruptcy Code.

### NOTICE

25. The Debtors have provided a notice of this motion to (a) the Office of the United States Trustee for the Eastern District of New York; (b) each Debtors list of twenty (20) largest creditors; (c) counsel to debtors-in-possession lender; (d) the Internal Revenue Service; (e)

counsel to Key Bank. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request the Court (i) enter an order authorizing but not directing the Debtors to pay pre-petition claims of Mercur and any Maritime Lien Claims; and (ii) authorizing financial institutions to honor all related checks and electronic payment requests; and (iii) granting such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
November 12, 2009

                        CULLEN AND DYKMAN LLP

                        By:   s/ Matthew G. Roseman
                        Matthew G. Roseman, Esq. (MR 1387)
                        C. Nathan Dee, Esq. (CND 9703)
                        Bonnie L. Pollack, Esq. (BP 3711)
                        Attorneys for Global Container Lines Ltd., et al.
                        100 Quentin Roosevelt Boulevard
                        Garden City, New York 11530
                        (516) 357-3700